

IN THE
TENTH COURT OF APPEALS

————————

No. 10-09-00261-CV

IN RE DOLORES CERVANTES, LUPE CERVANTES, OLGA RUBIO,
MICHAEL ABELINO AND ASHLI MICHELLE CERVANTES

————————

Original Proceeding

## DISSENT TO OPINION ON REHEARING
### (And The Orders Imbedded Therein)

The liberal recognition of exceptions to our Rules of Procedure and Evidence used by the Court creates the equivalent of private rules and unequal treatment for the litigants in this proceeding. In fact, the Court has so far departed from the Rules that we have ignored the distinctions in the two proceedings filed in the trial court.

I do not have the time to explain all the missteps and misques the Court[1] has taken, but I will try to comment upon the more egregious ones.

---

[1] The term "Court" as used herein may be technically incorrect. The Opinion on Rehearing is the opinion of only Justice Reyna; but the result reached therein is joined by Justice Davis without joining the opinion. As such, the opinion has no precedential value. There are other procedural issues but due to the pressure of time, I will not elaborate on all of them.

There were two proceedings filed in the trial court. I will refer to them as the State's case and the Interlopers' case. The State's case was filed on June 27, 2008, to terminate the parental rights of Mary and Frank (pseudonyms for mother and father) as to Carl (another pseudonym), their child. This suit bears cause number 76,744-CCL.

The time within which the statute requires that the trial for this proceeding commence is a maximum of 18 months from the date it was filed. Many months went by and the matter appeared to be on track for a timely disposition. Even when the Fosters (pseudonym) intervened in the State's case on February 13, 2009, because they wanted to be more than foster parents, there was no reason to expect the proceeding would be delayed.

Then in March 2009, many months after the State's case was filed, with the assistance of Mary and Frank, five relatives of Mary or Frank, all with some distant family connection to Carl, attempted to intervene in the State's case and took the position it is in Carl's best interest that one or more of them should be appointed managing conservator of Carl.

The trial court denied their plea in intervention in early June 2009. Undaunted, the five decide to use a different tact. Almost two months after the court denied their intervention in the State's case, they filed a new and separate suit affecting the parent child relationship, the Interlopers' case, and sought to have it consolidated with the State's case. The Interlopers' case was filed as cause number 79,062-CCL. The motion to consolidate was filed in the State's case.

Interestingly, the State and the Fosters went into the Interlopers' case and argued on separate grounds that none of the five relatives had standing to file the Interlopers' case, a SAPCR (Suit Affecting Parent Child Relationship).

In a hearing held on August 7, 2009, erroneously referred to by the trial court as occurring in the State's case, the trial court determined that none of the five relatives had standing and struck the petition in the Interlopers' case. Not yet willing to throw in the towel, the five relatives filed a petition for writ of mandamus from the Interlopers' case and a notice of appeal in the State's case on August 12, 2009. This proceeding is a purported mandamus of the striking of the petition, the SAPCR, filed by the five relatives, in the Interlopers' case.

The Court requested a response and stayed the trial court proceeding. Therein this Court made its first two errors that have plagued the Court, the parties, and the trial court. When this Court requested a response to the petition for writ of mandamus, that request was in regard to the striking of the petition, the SAPCR, filed in the Interlopers' case. However, the striking of that petition was a final judgment that ended that proceeding in the trial court. As such, there was no need to proceed by mandamus because a direct appeal was immediately available.

The other error the Court made was in granting an emergency stay of the State's case. We had no authority to stay the trial court proceedings in the State's case, a suit from which a petition for writ of mandamus had not been filed.

The Court almost overcame the effect of these two errors. After unnecessarily requesting a response, the Court denied the petition for writ of mandamus on

September 23, 2009 in the Interlopers' case and lifted the stay in the State's case. The reason for the denial was because the five relatives, the petitioners, had failed to provide an authenticated transcript containing the oral order striking the petition for intervention in the Interlopers' case. Apparently, no written order has been signed.

But just when it appeared things were about to get back on track in the State's case, the Court shot itself in the foot when a majority granted a motion for rehearing because the reporter's record had become available. The Court has ignored the fact that the record was not even requested until two days *after* the Court issued its opinion denying the petition for writ of mandamus. I voted to deny the motion for rehearing. The Court requested a response to the motion for rehearing and, later, again erroneously, stayed the State's case from proceeding to trial.

The Court finally received the reporter's record on October 5, 2009. A motion to supplement the mandamus record and a supplemental petition for writ of mandamus were filed on October 16, 2009.

This brings us to the Court's opinion, now granting relief on the petition for writ of mandamus. The Court struggles to overcome the numerous legal hurdles to granting relief. A partial listing is as follows:

1. Overcoming the late-filed record;
2. Overcoming uncorrected procedural deficiencies in the petition that were pointed out by the real parties in interest;
3. Using the standard of review in a manner that eliminates the trial court's role as a fact finder;
4. Reliance on an offer of proof that was never offered (and it was not made until after the trial court had ruled);
5. Ignoring the total failure to pursue the direct appeal, which could have, if properly pursued, accorded the same relief the Court

purports to order by mandamus, thus ignoring the standard for issuance of a writ of mandamus; and

6. Ignoring the waiver of the very claim on which relief is being granted in this proceeding by the relatives having failed to pursue relief from the earlier denial of their plea in intervention filed by the five relatives in the State's case, by either a petition for writ of mandamus or pursuit of the direct appeal they filed at the same time they filed this mandamus proceeding.

I note the only "unusual circumstance" in this proceeding for not having the reporter's record was that it is unusual that the party needing the record for a mandamus proceeding did not even request it until two days after the Court's opinion was issued denying the petition for writ of mandamus. That is hardly the type "unusual circumstance" that should justify late supplementation of the record. This is particularly true when the real party in interest and the Court had pointed out the deficiency and given the parties time to correct it before the opinion denying relief was issued.

## CONCLUSION

I would deny the motion for rehearing leaving our prior unanimous opinion denying the petition for writ of mandamus undisturbed. Because the Court orders relief, I respectfully dissent.

TOM GRAY
Chief Justice

Dissent to order and Opinion on Rehearing delivered and filed November 10, 2009